# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| David James Carlson, | Civ. No. 16-765 (SRN/BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| County of Ramsey, Minnesota; County of Anoka, Minnesota; and Independent School District #624, White Bear Lake, Minnesota, | |
| Defendants. | |

David James Carlson, *Pro Se*, 11240 Sand Castle Drive, #A, Woodbury, Minnesota 55129.

Robert B. Boche, Ramsey County Attorney's Office, Civil Division, 121 Seventh Place East, Suite 4500, St. Paul, Minnesota 55101 for Defendant County of Ramsey;

Andrew T. Jackola and Jason J. Stover, Anoka County Attorney's Office, 2100 Third Avenue, Suite 720, Anoka, Minnesota 55303, for Defendant County of Anoka;

Kristin C. Nierengarten and Scott T. Anderson, Rupp, Anderson, Squires & Waldspurge, 333 South Seventh Street, Suite 2800, Minneapolis, Minnesota 55402, for Defendant Independent School District #624.

SUSAN RICHARD NELSON, United States District Judge

David James Carlson has filed a civil action under 42 U.S.C. § 1983, challenging various state court orders and associated actions involved in a protracted child custody dispute with his ex-wife. (*See* Doc. No. 1, Compl.) This matter is currently pending on Carlson's motion for an expedited hearing and immediate relief, which the Court construes as a request for a preliminary injunction pending the outcome of this case.

(Doc. No. 2, Pl.'s Mot.) Carlson's motion seeks restoration of his custodial and visitation

rights, reversal of a state-court restraining order in favor of his ex-wife, and an injunction

barring the state juvenile court from demanding the release of his mental health records

from the Department of Veterans Affairs. (*Id.* at 1–2.) After reviewing Carlson's motion

and underlying complaint, it has become apparent to the Court that it lacks subject-matter

jurisdiction over Carlson's claims for relief under *Rooker-Feldman* and the *Younger*

abstention doctrine, among other things. Accordingly, this action is dismissed without

prejudice for lack of jurisdiction, and all pending motions are denied as moot.[1]

## BACKGROUND

### A.     State Proceedings Prior to this Lawsuit

David Carlson is a combat veteran with twin nine-year-old daughters. (Compl. 7.)

After two years of marriage and four years of separation, he and his ex-wife divorced in

July 2012 pursuant to a joint agreement filed in the Second Judicial District Court for

Ramsey County, Minnesota. (*See id.* at 11; Doc. No. 2, Attach. 6 at 2 & Attach. 13 at 16–

18.) That agreement provided for joint legal and physical custody of the couple's

identical twin girls, then five years old, with roughly equal parenting time each. (*See*

Compl. 11; Doc. No. 2, Attach. 6 at 3 & Attach. 13 at 15–16.) Carlson's ex-wife

remarried in 2013 and the former couple began having disagreements over their

---

[1]     During the Court's review of Carlson's motion and underlying complaint, Ramsey and Anoka counties filed motions to dismiss for failure to state a claim for relief and/or improper service of process. (Doc. Nos. 21, 25.) Because the Court concludes that it lacks jurisdiction over this action, there is no need to address the merits of those motions and they are denied as moot.

respective parenting time with the children. (*See* Compl. 12–18; Doc. No. 2, Attach. 6 at 3 & Attach. 13 at 20–21, 26–28.)

On January 22, 2014, Carlson's ex-wife filed a petition for a harassment restraining order ("HRO") with the Tenth Judicial District Court for Anoka County, Minnesota, alleging that Carlson had been "physically abusive after a school event for [the couple's] children," surreptitiously sat outside her home during her parenting time, made unwanted visits to her home and work, and repeatedly sent her demeaning and threatening text messages. (*See* Compl. 19–21; Doc. No. 2, Attach. 5 at 2–4.) Following a hearing, the Anoka County court issued an HRO against Carlson on April 18, 2014, finding reasonable grounds to believe that he had engaged in "repeated incidents of intrusive and unwanted acts, words and gestures that had a substantial adverse effect on the safety and security of [his ex-wife]." (Doc. No. 2, Attach. 6 at 8–9.) The HRO, which was to remain in effect for two years, prohibited Carlson from coming within five-hundred yards of his ex-wife's home and work, and having any contact with her except via the Our Family Wizard website to confirm the time and place for exchanging the children, notifying her of any child illnesses, and informing her that he was choosing not to exercise his parenting time. (*Id.* at 9–10.) Carlson explains that he did not appeal the HRO because he could not afford the requisite fees, including the fee for obtaining a transcript of the court hearing. (Compl. 33.)

During the same timeframe, Carlson moved the Ramsey County court for additional parenting time and a change in the ex-couple's weekly parenting schedule. (*See* Doc. No. 2, Attach. 13 at 16.) Following mediation, the parties reached a joint

stipulation in which Carlson agreed to rescind his motion and receive significantly less parenting time in exchange for the dismissal of the HRO, albeit with its provisions incorporated into the joint agreement. (*See* Compl. 34–35; Doc. No. 2, Attach. 7 at 2–3, Attach. 8 at 2–4, & Attach. 16 at 2.) The Ramsey County court approved the stipulation, but the Anoka County court refused to dissolve the HRO. (*See* Compl. 9, 35; Doc. No. 2, Attach. 13 at 16, 49 & Attach. 16 at 2–8.)

Thereafter, on June 16, 2015, Carlson's ex-wife asked the Ramsey County court to award her sole custody of the children and limit Carlson's parenting time to every other weekend. (*See* Doc. No. 2, Attach. 13 at 4.) After a hearing, the court appointed a guardian ad litem ("GAL") for an initial six-month term to conduct an independent investigation and prepare a written report "regarding all matters relating to the best interests of the [children]," including recommendations as to both temporary and permanent child custody and parenting time. (*See* Compl. 41–42; Doc. No. 2, Attach. 2 at 3–7, & Attach. 13 at 16.) The court's order directed the parties and all other persons, organizations, and entities to cooperate with the investigation and release any relevant information requested by the GAL, including mental health records pertaining to the children and their parents. (Doc. No. 2, Attach. 2 at 5–6.)

As part of her court-ordered investigation, the GAL visited the twin girls at their parents' homes and at their elementary school in Independent School District #624 ("ISD 624"), where she separately interviewed the children behind closed doors. (*See* Compl. 42; Doc. No. 2, Attach. 13 at 34–38.) The GAL also had telephone conversations with the girls' third-grade teachers, both of whom indicated that the children were doing well in

school but expressed concerns about Carlson regularly visiting the elementary school for lunch and recess. (*See* Doc. No. 2, Attach. 13 at 38–39.)

The GAL completed a detailed report regarding her investigation on October 21, 2015, finding grounds to believe that the girls' "health, safety and well-being are jeopardized in Mr. Carlson's custody and care." (Doc. No. 2, Attach. 13 at 56.) The GAL noted numerous areas of concern about Carlson, including that he (1) appeared to disparage his ex-wife to the children and place them in the middle of the ex-couple's ongoing conflict; (2) made unfounded allegations that the children were being physically abused by their mother's new husband; (3) reportedly refused to take the children for his parenting time on several occasions; (4) reportedly informed the children that they "may not see or live" with either of their parents again and that their mother "may go to jail"; (5) failed to inform his ex-wife of the girls' medical appointments and medical care; and (6) refused to sign a release for his mental health records despite the court's prior order. (Doc. No. 2, Attach. 13 at 53–56.) In light of those concerns, the GAL recommended that the mother be awarded temporary sole custody of the children, that Carlson be limited to supervised parenting time once per week and required to release his mental health records, and that further review be conducted in ninety days. (*Id.* at 57–58.)

The Ramsey County court held a hearing on October 26, 2015, during which Carlson objected to the veracity and impartiality of the GAL's report. (Doc. No. 2, Attach. 2 at 2–3.) The court overruled those objections, finding the contents of the GAL's report to be both "credible and disturbing." (*Id.* at 3.) On November 6, 2015, the court issued a formal order adopting the GAL's report, awarding Carlson's ex-wife temporary

sole custody of the children, granting Carlson two hours per week of supervised parenting time, extending the GAL's appointment, and setting another hearing for February 11, 2016. (*See* Doc. No. 2, Attach. 2 at 2–3, Attach. 4 at 2–3, & Attach. 13 at 4.) The court also ordered Carlson to complete a psychological evaluation and parenting assessment; release his mental health records to the GAL; and refrain from disparaging his ex-wife in front of the children, discussing court-related matters with them, or making promises to them regarding the outcome of the custody dispute. (Doc. No. 2, Attach. 4 at 2–3.)

The GAL issued an updated report on February 4, 2016, which indicated that Carlson had not completed the court-ordered parenting assessment and continued to refuse to release his mental health records, including his recent psychological evaluation, because "as a veteran he did not feel he should have to do [so]." (Doc. No. 2, Attach. 13 at 8–11.) The GAL also noted that Carlson had reportedly made public comments about the child-custody proceedings on social media, comments which had reached the parents of the children's peers and friends. (*Id.* at 7, 10–11.) The GAL recommended that Carlson's ex-wife continue to have temporary sole custody of the children with Carlson limited to weekly supervised parenting time, and that Carlson be ordered to release his mental health records and refrain from sharing information about the custody proceedings in any public forum. (*Id.* at 11–12.)

Carlson filed a motion asking the Ramsey County court to vacate its prior custody order, restore his joint custodial rights and equal parenting time, and appoint a new GAL. (Doc. No. 2, Attach. 8 at 2, 4–11.) Carlson impugned the GAL for "conduct[ing] her duties in a grossly negligent manner" and showing "intentional bias against [him]

6

throughout the entire investigation," and impugned the court for revoking his custodial rights based on a report that "failed to set forth . . . objectively verifiable evidence sufficient . . . to remove [his] children from him throughout the entire 2015 holiday season" and without affording him an adequate opportunity to review the GAL's initial report and question her about it. (*Id.* at 8–9.)

Before the scheduled review hearing, the GAL received Carlson's psychological evaluation, conducted by Dr. James Tuorila, which indicated that Carlson had previously been diagnosed by a Department of Veterans Affairs' ("VA") therapist with post-concussion syndrome, anxiety, and narcissistic personality disorder. (*See* Doc. No. 2 at 3, 5 & Attach. 4 at 4.) Based on his evaluation, which consisted of a single two-hour interview, Dr. Tuorila ruled out narcissistic personality disorder; diagnosed Carlson with anxiety disorder, mild depression, and "[r]esiduals of multiple concussions"; and opined that Carlson's "parental rights should resume immediately" because he "is and can continue to be a good father and role model for his children." (Doc. No. 2 at 6.)

At the February 11 hearing, Carlson objected to the GAL's updated report in its entirety, asserting that the GAL was incompetent and not fit to conduct her investigations. (Doc. No. 2, Attach. 4 at 4–5.) According to the court's post-hearing order, Carlson repeatedly interrupted and yelled at the presiding judge, attempted to intimidate both the judge and the GAL, and became increasingly belligerent. (*Id.* at 5–6.) Carlson was found in contempt of court and taken to the courthouse jail, where he allegedly remained for eight hours. (*See* Compl. 56; Doc. No. 2, Attach. 4 at 5–6.) The court then adopted the GAL's report and recommendations over Carlson's objections.

(*Id.* at 5–6.) Later that day, Carlson was brought back before the court and, as a contempt sanction, was sentenced to three days in the courthouse jail; the sentence was stayed, however, after Carlson apologized for his behavior during the hearing and assured the court that he would sign a release for his medical records. (*Id.*) Carlson alleges that the court threatened to incarcerate him for ninety days if he did not sign a medical release. (Compl. 6, 57.)

On March 1, 2016, the Ramsey County court issued a written order adopting the GAL's updated report. (Doc. No. 2, Attach. 4.) The order continued the ex-wife's temporary sole custody of the children and Carlson's limited parenting time under supervision. (*Id.* at 6.) Given perceived deficiencies in Dr. Tuorila's psychological evaluation, including the absence of a Minnesota Multiphasic Personality Inventory, the court again ordered Carlson to undergo a psychological and parenting assessment, and again ordered that he release his mental health records to the GAL. (*Id.* at 4, 7–8.) The court scheduled another review hearing for May 23, 2016, and further extended the GAL's appointment because the "matters regarding custody and parenting time [were] not yet resolved." (*See* Doc. No. 2, Attach. 3 at 6 & Attach 4 at 6.)

## B.    **This Lawsuit**

On March 24, 2016, Carlson filed this federal lawsuit against Ramsey County, Anoka County, and ISD 624, claiming that the state court judges and court-appointed GAL had, through their custody, contempt, and restraining orders, violated his constitutional rights, the confidentiality of his VA medical records, and state tort law. (Compl. 4–5, 61–104.) He further claims that ISD 624, through school employees,

violated his due process rights, federal regulations, and state negligence law by allowing

the GAL to interview his daughters outside the presence of their elementary school

principal, a school psychologist, or other adult, and permitting the GAL to interview the

children's teachers over the phone. (*Id.* at 5, 42, 45, 105–12.) In relief, Carlson seeks the

immediate restoration of his custodial and visitation rights, dismissal of the HRO,

removal of the GAL, reversal of the court-ordered disclosure of his medical records, an

injunction preventing the Ramsey and Anoka County courts from "continuing to deprive

[him] of his rights," and monetary damages. (*Id.* at 68–69, 96, 123–26.) In other words,

he seeks reversal of the prior custody, contempt, and restraining orders, as well as federal

intervention in the ongoing custody proceedings.

## DISCUSSION

### A.    Jurisdictional Principles

As courts of limited jurisdiction, federal courts have an independent duty to assure

themselves of their jurisdiction and to dismiss any action over which federal jurisdiction

is lacking. *See, e.g.*, *Robins v. Ritchie*, 631 F.3d 919, 924 (8th Cir. 2011). "[I]t is to be

presumed that a cause lies outside this limited jurisdiction and the burden of establishing

the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins.

Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

Carlson invokes federal-question jurisdiction under 28 U.S.C. § 1331, which

encompasses "civil actions under the Constitution, laws, or treaties of the United States"

that present a "substantial federal question." *See Hagans v. Lavine*, 415 U.S. 528, 536–37

(1974) (quotation omitted). Even where a complaint presents a substantial federal

9

question, however, several longstanding doctrines preclude the exercise of federal

jurisdiction where it would otherwise exist.

Under the *Rooker-Feldman* doctrine, lower federal courts lack jurisdiction over

direct challenges to final state court decisions and any claims that are inextricably

intertwined with those decisions. *Robins*, 631 F.3d at 924–95; *see also Exxon Mobile

Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (explaining that *Rooker-

Feldman* precludes federal jurisdiction over cases "complaining of injuries caused by

state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments"). A claim is inextricably

intertwined with a state court decision if it "succeeds only to the extent that the state court

wrongly decided the issues before it or if the relief requested would effectively reverse

the state court decision or void its ruling." *Fielder v. Credit Acceptance Corp.*, 188 F.3d

1031, 1034–35 (8th Cir. 1999) (quotation and alterations omitted). The theory behind

*Rooker-Feldman* is that, outside the habeas corpus context, federal jurisdiction to review

state court decisions is vested exclusively in the United States Supreme Court. *See

Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003). Thus, "where federal relief can

only be predicated upon a conviction that the state court was wrong," the federal district

court proceedings are tantamount to "a prohibited appeal of the state-court judgment."

*Lemonds v. St. Louis Cty.*, 222 F.3d 488, 493 (8th Cir. 2000) (quotation omitted). A state

court decision may be sufficiently final for *Rooker-Feldman* purposes where the relevant

state proceedings have come to an end or where the challenged decision finally resolves

the federal issues at play in the federal litigation, even if other matters remain pending at

the state level. *See Robins*, 631 F.3d at 927; *Mothershed v. Justices of the Sup. Ct.*, 410

F.3d 602, 604 n.1 (9th Cir. 2005); *Federacion de Maestros de Puerto Rico v. Junta de*

*Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24–26 (1st Cir. 2005); *see also In re*

*Goetzman*, 91 F.3d 1173, 1178 (8th Cir. 1996) (noting that *Rooker-Feldman* may apply

even in the absence of "a final judgment on the merits" of the state litigation).

Moreover, the *Younger* abstention doctrine precludes federal courts from

intervening in certain state judicial proceedings, including pending state criminal

proceedings, civil enforcement proceedings akin to criminal prosecutions, and civil

proceedings that "implicate a State's interest in enforcing the orders and judgments of its

courts." *Sprint Commc'ns, Inc. v. Jacobs*, — U.S. —, 134 S. Ct. 584, 588 (2013). If a

case falls within one of these three categories, a federal court must abstain from

exercising jurisdiction where the state proceedings are ongoing, implicate important state

interests, and provide an adequate opportunity to raise any federal challenges. *Id.* at 593–

94 (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432

(1982)); *see also Night Clubs, Inc. v. City of Fort Smith, Ark.*, 163 F.3d 475, 477 n.1 (8th

Cir. 1998) ("The *Younger* abstention doctrine . . . directs federal courts to abstain from

accepting jurisdiction in cases where equitable relief is requested and where granting

such relief would interfere with pending state proceedings in such a way as to offend

principles of comity and federalism."). The *Younger* abstention doctrine is grounded in

considerations of federal-state comity, including "proper respect for state functions,"

"recognition of the fact that the entire country is made up of a Union of separate state

governments," a "belief that the National Government will fare best if the States and their

institutions are left free to perform their separate functions in their separate ways," and the notion that state courts are equally capable of "safeguard[ing] federal constitutional rights." *Middlesex Cty. Ethics Comm.*, 457 U.S. at 431.

**B.  Analysis of Carlson's Claims**

Carlson disputes the actions and outcomes of the state judicial proceedings related to the custody of his children. Those disputes, however, are exempt from this Court's jurisdiction under the *Rooker-Feldman* or *Younger* abstention doctrines.

Carlson's federal and state law claims against Ramsey County, Anoka County, and ISD 624 fall into two basic categories: (1) direct challenges, whether procedural, evidentiary, or substantive, to the prior state court orders imposing an HRO against him, awarding temporary sole custody of his children to his ex-wife, and requiring him to release his mental health records; and (2) challenges to the integrity and findings of the GAL investigation that underpinned the Ramsey County court's custody determinations. (*See* Compl. 5, 46, 48, 56, 58, 63–65, 95, 109.) In one form or another, Carlson previously asserted many of those challenges in the state custody proceedings, arguing that the GAL was biased and incompetent, conducted her investigation in a grossly negligent manner, and issued reports rife with false allegations and devoid of objectively verifiable information sufficient to warrant the removal of his children from his custody. (*See* Doc. No. 2, Attach. 3 at 3, Attach. 4 at 5, & Attach. 8 at 8–9.) The Ramsey County court rejected those claims, either explicitly or by necessary implication, when it adopted the GAL's reports and awarded temporary sole custody to Carlson's ex-wife. (*See* Doc. No. 2, Attach. 3 at 3 & Attach. 4 at 6.) Carlson now asks this Court to reverse the state

courts' HRO and custody orders, including the requirement that he release his mental

health records, to remove the court-appointed GAL, and to enjoin the state courts from

continuing to deprive him of his rights. (*See* Compl. 68–69, 96, 123–26; Doc. No. 6 at 2.)

To the extent the challenged state court decisions are final for *Rooker-Feldman*

purposes, including by having resolved the procedural and evidentiary issues that Carlson

now seeks to litigate in federal court, Carlson's claims fall outside this Court's

jurisdiction because they either seek direct reversal of those decisions or are inextricably

intertwined with those decisions.[2] *See Lemonds v. St. Louis Cty.*, 222 F.3d 488, 492 (8th

---

[2]     The April 2014 HRO issued by the Anoka County court is final for *Rooker-Feldman* purposes, as Carlson failed to timely appeal the restraining order within sixty days and the relevant proceedings came to an end long before he filed this federal lawsuit. *See Federacion de Maestros de Puerto Rico*, 410 F.3d at 24 (explaining that *Rooker-Feldman* applies where "a lower court issues a judgment and the losing party allows the time for appeal to expire"); *State v. Harrington*, 504 N.W.2d 500, 503 (Minn. Ct. App. 1993) (noting that a restraining order is appealable and that a party who fails to timely appeal it is "precluded from attacking it in [a] subsequent action"); Minn. R. Civ. App. P. 104.01 ("[A]n appeal may be taken from a judgment within 60 days after its entry, and from an appealable order within 60 days after service by any party of written notice of its filing."). The Court need not conclusively decide whether the Ramsey County court's orders awarding temporary sole custody to Carlson's ex-wife are also final for *Rooker-Feldman* purposes because, as explained below, the *Younger* abstention doctrine precludes federal interference with the ongoing state custody proceedings. *Compare Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014) (explaining that the "principle that only the Supreme Court can review the decisions by the state judiciary in civil litigation" is applicable to interlocutory orders), *Federacion de Maestros de Puerto Rico*, 410 F.3d at 24–26 (holding that *Rooker-Feldman* applies to interlocutory orders that have decided "the issues that the federal plaintiff seeks to have reviewed in federal court, even if other matters remain to be litigated" in the state proceedings), *and Liedel v. Juvenile Ct. of Madison Cty., Ala.*, 891 F.2d 1542, 1545 (11th Cir. 1990) (applying *Rooker-Feldman* to temporary custody orders), *with Green v. Mattingly*, 585 F.3d 97, 99, 104 (2d Cir. 2009) (holding that *Rooker-Feldman* did not bar claims challenging an interlocutory order that "temporarily removed plaintiff's child from her custody" where the order was "effectively reversed by a superseding state-court order," the federal action

(Footnote Continued on Next Page)

Cir. 2000) ("The *Rooker-Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions."); *Cassell v. Cty. of Ramsey*, 490 F. App'x 842 (8th Cir. 2012) (affirming the dismissal of a complaint seeking "to overturn state-court rulings made in the course of five years of child custody and support litigation" based, in part, on *Rooker-Feldman*); *see also Harold v. Steel*, 773 F.3d 884, 887 (7th Cir. 2014) (explaining that *Rooker-Feldman* applies to claims challenging "the procedures that state courts use to reach decisions or the evidence that state judges consider"); *Wideman v. Colorado*, 242 F. App'x 611, 613–14 (10th Cir. 2007) (holding that claims relating to a child custody determination, including allegations that the plaintiff's parental rights were altered "on the basis of insufficient and/or false evidence," were "little more than thinly disguised efforts to overturn, or at least call into question the validity of, the rulings entered against him by the Colorado state courts"). Because the relief Carlson seeks can only be "predicated upon a conviction" that the state courts were wrong in issuing an HRO and awarding temporary sole custody to his ex-wife, "it is difficult to conceive" how these proceedings are, "in substance, anything other than a prohibited appeal" of state court decisions. *See Lemonds*, 222 F.3d at 493. His claims are therefore barred by the *Rooker-Feldman* doctrine.

---

(Footnote Continued from Previous Page)
was "brought after the state-court proceeding was dismissed," and "any appeal of the interlocutory order would have been moot"), and *Morkel v. Davis*, 513 F. App'x 724, 727 (10th Cir. 2013) (holding that *Rooker-Feldman* did not apply to a state court custody order because the custody proceedings were still ongoing when the federal suit was filed).

Insofar as Carlson's claims seek federal interference in the state custody

proceedings, including reversal of any judicial decisions that are beyond *Rooker-*

*Feldman*'s strictures, those claims are subject to dismissal under the *Younger* abstention

doctrine. The child custody proceedings were still pending when Carlson filed his federal

lawsuit and, indeed, are still pending to this date. *See Tony Alamo Christian Ministries v.*

*Selig*, 664 F.3d 1245, 1250 (8th Cir. 2012) ("For purposes of applying *Younger*

abstention, the relevant time for determining if there are ongoing state proceedings is

when the federal complaint is filed."). The state proceedings involve "orders uniquely in

furtherance of the state courts' ability to perform their judicial functions," *Sprint*, 134 S.

Ct. at 591, such as the custody, contempt, and disclosure orders that "are integral to the

State court's ability to perform its judicial function in . . . custody proceedings," *Falco v.*

*Justices of the Matrimonial Parts of Sup. Ct. of Suffolk Cty.*, 805 F.3d 425, 428 (2d Cir.

2015). They also implicate important state interests in domestic relations, a traditional

area of state concern where federal abstention is particularly appropriate. *See Elk Grove*

*Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (counseling against federal

intervention in "the realm of domestic relations" given that "the whole subject of the

domestic relations of husband and wife, parent and child, belongs to the laws of the

States and not to the laws of the United States") (quotation and brackets omitted),

*abrogated on other grounds by Lexmark Int'l, Inc. v. Static Contest Components, Inc.*,

134 S. Ct. 1377 (2014); *Mansell v. Mansell*, 490 U.S. 581, 587 (1989) ("[D]omestic

relations are preeminently matters of state law."); *Moore v. Sims*, 442 U.S. 415, 435

(1979) ("Family relations are a traditional area of state concern."); *Tony Alamo*, 664 F.3d

at 1249 ("[T]here is no doubt that state-court proceedings regarding the welfare of children reflect an important state interest that is plainly within the scope of [*Younger*]."); *Liedel*, 891 F.2d at 1546 ("[U]nder *Younger* and *Sims* federal district courts may not interfere with ongoing child custody proceedings."); *Morkel*, 513 F. App'x at 728 ("This court and other circuits have consistently applied *Younger* to child custody cases.") (collecting cases).

Furthermore, Carlson will have an adequate opportunity to raise any federal challenges in the state custody proceedings themselves. *See P.G. v. Ramsey Cty.*, 141 F. Supp. 2d 1220, 1229 (D. Minn. 2001) ("[J]uvenile courts in Minnesota may decide issues of federal constitutional law."); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14–15 (1987) (explaining that federal courts should assume that federal claims can be raised in a state proceeding unless the plaintiff presents "unambiguous authority to the contrary"). That the Ramsey County court has rejected some of Carlson's claims and may reject others does not mean that he has no opportunity to raise his federal claims in state court, nor does it mean that the court is fundamentally incapable of enforcing federal constitutional rights. *See Juidice v. Vail*, 430 U.S. 327, 337 (1977) (stating that *Younger* only requires "an opportunity to present . . . federal claims in the state proceedings"); *Middlesex Cty. Ethics Comm.*, 457 U.S. at 431 ("Minimal respect for the state processes . . . precludes any *presumption* that the state courts will not safeguard federal constitutional rights."). Proper respect for the state court's ability to resolve federal questions during the ongoing child custody proceedings "mandates that [this Court] stay its hand." *Pennzoil Co.*, 481 U.S. at 14. Thus, the *Younger* abstention doctrine precludes this Court from

interfering with the pending child custody proceedings, including by granting Carlson's requests to remove the court-appointed GAL, restore his custodial and visitation rights, and prohibit the Ramsey County court from accessing his mental health records.[3] *See H.C. ex rel Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000) (applying *Younger* to a suit seeking "wholesale federal intervention" into an ongoing state custody dispute, including "vacation of existing interlocutory orders" and a "federal injunction directing the future course of the state litigation").

The Court's holdings regarding *Rooker-Feldman* and *Younger* are applicable to Carlson's claims that ISD 624 violated both his due process rights and 46 C.F.R. § 5.29 by negligently allowing the GAL to interview his children outside the presence of their elementary school principal, a school psychologist, or other adult, and to interview the children's teachers over the phone. (*See* Compl. 42–48.) Those claims are so closely tied to the GAL's investigation and the ensuing state custody orders as to fall within the scope

---

[3]      Although Carlson seeks monetary damages in addition to declaratory and injunctive relief, dismissal under *Younger* is still appropriate because an award of damages on his claims would first require a determination that the state court's revocation of his custodial rights was unconstitutional or otherwise wrong. *See Night Clubs, Inc.*, 163 F.3d at 481–82 (holding that dismissal of an action requesting both monetary damages and injunctive relief is appropriate where a damages award would first require the court to "overturn a state court judgment on a matter of state policy"); *see also Amerson v. Iowa*, 94 F.3d 510, 513 (8th Cir. 1996) ("[A] plaintiff's incidental insertion of a general claim for damages will not suffice to prevent the dismissal of a § 1983 case [under abstention principles] where the damages sought cannot be awarded without first declaring unconstitutional a state court judgment on a matter firmly committed to the states."). Moreover, based on the record, the Court does not detect any "bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate." *See Middlesex Cty. Ethics Comm.*, 457 U.S. at 435. Indeed, the Eighth Circuit has only recognized the bad-faith exception to *Younger* abstention in criminal cases. *See Aaron v. Target Corp.*, 357 F.3d 768, 778 (8th Cir. 2004).

of either *Rooker-Feldman* or *Younger*. *See Lemonds*, 222 F.3d at 493 ("[E]ven if

appellants were not asking us effectively to overturn the state court's judgment, the

federal claims they state so closely implicate the decision of the state court that the

federal suit would be barred anyway."). But even if that were not the case, those

particular claims still fail to raise a substantial federal question under 28 U.S.C. § 1331.

For jurisdictional purposes, a federal claim is insubstantial if it is "absolutely devoid of

merit," "obviously frivolous," "plainly unsubstantial," or "no longer open to discussion."

*Hagans*, 415 U.S. at 536–37; *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10

(2006); *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1291–92 (11th Cir. 2004).

In turn, claims are frivolous if they lack an "arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

   Both of Carlson's federal claims against ISD 624 lack an arguable basis in law

and, thus, fail to raise a substantial federal question. The federal regulation invoked by

Carlson, 46 C.F.R. § 5.29, defines negligence for purposes of administratively revoking

credentials and licenses issued by the U.S. Coast Guard to merchant mariners. *See* 46

C.F.R. § 5.3 ("The regulations in this part establish policies for administrative actions

against mariners' credentials or endorsements issued by the Coast Guard."); *id.* § 5.5

("The administrative actions against a license, certificate, merchant mariner credential,

endorsement, or document are . . . intended to help maintain standards for competence

and conduct essential to the promotion of safety at sea."). Those regulations have no

applicability to state school districts or school officials, let alone create a private right of

action against such entities in federal court for negligence, which is typically a matter of

state tort law.[4] *Cf. Abner v. Mobile Infirmary Hosp.*, 149 F. App'x 857, 858 (11th Cir. 2005) (holding that claims for alleged violations of the Medicare Act were properly dismissed for lack of federal jurisdiction because the "Medicare Act does not create a private right of action for negligence and . . . no federal statute . . . support[s] these particular claims, which seem to be state tort claims").

Likewise, Carlson's due process claim against ISD 624 is really a state negligence claim presented as a federal constitutional claim. The crux of Carlson's due process claim is that school officials breached their "duty of due care to protect the integrity of the [custody] investigation" by negligently allowing the GAL to interview his children outside the presence of the school principal, school psychologist, or other adult, and that the teachers who spoke to the GAL "breached their duty to possibly be able to verify who they were speaking with . . . over the phone." (Compl. 109–10.) While "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children," *Slaven v. Engstrom*, 710 F.3d 772, 779 (8th Cir. 2013) (quotation omitted), the Court is unaware of any legal basis for concluding that parents have a constitutionally protected liberty interest in ensuring that their children are not interviewed alone by a court-appointed

---

[4]     In a similar vein, the Court notes that Carlson's claim that the Ramsey County court violated 38 U.S.C. § 7332 by ordering the release of his VA mental health records finds no support in that statute. (*See* Compl. 82–92.) Section 7332 generally protects the confidentiality of VA medical records, but expressly permits disclosure without the patient's consent if "authorized by an appropriate order of a court of competent jurisdiction." 38 U.S.C. § 7332(b)(2)(D). In other words, the Ramsey County court could order the release of Carlson's VA records without running afoul of § 7332.

GAL or that school officials not speak to a GAL over the phone, particularly where, as here, a state juvenile court has ordered all persons, organizations, and other entities to fully cooperate with the GAL's investigation. *See Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 819 (8th Cir. 2011) (holding that a parent's fundamental liberty interest in the care, custody, and management of her children did not include "contacting her children at their schools," particularly in light of a state court order restricting her visitation with the children to a specific schedule); *Dornheim v. Sholes*, 430 F.3d 919, 925–26 (8th Cir. 2005) (holding that the "constitutionally protected right to family integrity" does not include a right to be free from child-welfare investigations, including allegedly inadequate child "evaluations and therapy sessions"). The Fourteenth Amendment's Due Process Clause is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States"; it does "not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels v. Williams*, 474 U.S. 327, 332 (1986) (quotation omitted).

Moreover, even if the school officials' actions implicated a constitutionally protected liberty interest, the Supreme Court has long held that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process" because the "Constitution does not guarantee due care on the part of state officials." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). The Due Process Clause is simply not implicated by negligence or lack of due care causing unintended injury to a constitutionally protected interest in life, liberty, or property. *See Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Carlson's

20

attempt to constitutionalize the school officials' alleged negligence is antithetical to long-established legal principals and, hence, lacks any arguable basis in law. *See Daniels*, 474 U.S. at 332 (explaining that to treat negligently caused injury as "a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law"). Whatever state tort provisions Carlson "may rightly invoke" against the school officials or ISD 624, "the Fourteenth Amendment to the United States Constitution does not afford him a remedy." *Id.* at 336.

For all of the foregoing reasons, the Court concludes that it lacks subject-matter jurisdiction, or must abstain from exercising such jurisdiction, over Carlson's federal claims. And absent any federal claims over which this Court may exercise jurisdiction, there is no basis for assuming supplemental jurisdiction over Carlson's state tort claims.[5]

---

[5]    Even if this Court could exercise jurisdiction over Carlson's federal claims, those claims would still be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible claim for relief. It is evident from Carlson's complaint that he is seeking to hold Ramsey County, Anoka County, and ISD 624 vicariously liable for the actions of the state court judges, court-appointed GAL, and elementary school officials. A litigant may not, however, hold municipal entities or governing bodies liable under § 1983 simply because they employ alleged tortfeasors and, furthermore, the state court judges and GAL are not county employees, but state employees. *See Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997) (explaining that § 1983 does not impose vicarious liability on municipalities or governing bodies solely because they employ an alleged tortfeasor); *Granda v. City of St. Louis*, 472 F.3d 565, 568 (8th Cir. 2007) (holding that a municipality could not be held liable under § 1983 for the allegedly unlawful order of a municipal judge); *Egeland v. State*, 408 N.W.2d 848, 850–51 (Minn. 1987) (holding that state district court judges are state employees, not employees of the county in which their courts operate); Minn. Stat. § 480.181 (providing that "judicial officers" and "guardian ad litem program coordinators and staff . . . are state employees"). In addition, Carlson cannot directly sue the state court judges or the GAL for their alleged misdeeds because they are entitled to absolute immunity for actions taken in their official capacities, no matter how erroneous those actions may have been.

(Footnote Continued on Next Page)

*See* 28 U.S.C. § 1367. Accordingly, this action is dismissed without prejudice for lack of jurisdiction.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      This action is **DISMISSED WITHOUT PREJUDICE** for lack of federal subject-matter jurisdiction; and

2.      All pending motions (*see* Doc. Nos. 4, 6, 21, 25) are **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 15, 2016

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

---

(Footnote Continued from Previous Page)
*See Stump v. Sparkman*, 435 U.S. 349, 355–57 (1978) (absolute judicial immunity); *McCuen v. Polk Cty., Iowa*, 893 F.2d 172, 174 (8th Cir. 1990) (guardian ad litem entitled to absolute immunity for her role in a child's temporary removal from the home). Finally, as explained above, Carlson's purported federal claims against ISD 624 are not sustainable and, absent a viable federal claim against any of the named defendants, the Court would decline to exercise supplemental jurisdiction over any of his state law claims. *See* 28 U.S.C. § 1367.